# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9576 | **DATE** | 01/29/2004 |
| **CASE TITLE** | SLF Limited Partnership vs. Molecular Biosystems, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion to Alter or Amend Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion, Plaintiff's Motion to Alter or Amend the Judgment [Doc. # 78] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | JAN 3 0 2004 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | docketing deputy initials | 80 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| jar(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SLF LIMITED PARTNERSHIP, ) | |
| ) | No. 01 C 9576 |
| Plaintiff, ) | |
| ) | HONORABLE DAVID H. COAR |
| v. ) | |
| ) | |
| MOLECULAR BIOSYSTEMS, INC. ) | |
| ) | DOCKETED |
| ) | JAN 3 0 2004 |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On December 2, 2003, this Court issued its findings of fact and conclusions of law following a bench trial in this case. Plaintiff SLF Limited Partnership ("Plaintiff" or "SLF") timely filed a Motion to Alter or Amend the Judgment pursuant to Rule 52(b). Plaintiff's Motion has now been fully briefed and is ripe for decision.

Plaintiff asserts in its motion that this Court made two manifest errors of fact in its opinion. Both of these alleged errors relate to the characterization of Defendant Molecular Biosystems, Incorporated's ("Defendant" or "MBI") relationship with its two sublicensees: Mallinckrodt and Chugai. The first alleged error relates to the characterization of Defendant's sublicense agreement with Mallinckrodt. In the opinion of December 2, 2003, this Court found that MBI was "receiving and cashing" a five percent royalty from Mallinckrodt. Plaintiff correctly points out that MBI earned this five percent royalty under an earlier sublicensing agreement than the one that was in effect at the time Plaintiff submitted its Notice of Termination on December 14, 2001.

1

80

When Plaintiff submitted its Notice of Termination, the Third Amendment to the Mallinckrodt sublicense (known as the Optison Products Rights Agreement (OPRA)), was in effect. The Third Amendment to OPRA set forth a different royalty schedule. Under the Third Amendment to OPRA, Mallinckrodt was obligated to make a one-time payment of $5,000,000 to adjust the royalty schedule. (Pl. Tr. Ex. 83, at MBI000373) Beyond that, Mallinckrodt was obligated to pay an 8 percent royalty for net sales in excess of $20 million from October 1, 2001 to September 30, 2002, and an 8 percent royalty for net sales in excess of $30 million from October 1, 2002 to September 30, 2003. (Pl. Tr. Ex. 83, at MBI000373) After September 30, 2003, the Third Amendment to OPRA establishes that the "licenses granted to Mallinckrodt . . . shall be deemed exclusive, royalty-free, and perpetual . . . ." (Pl. Tr. Ex. 83 at MBI000373). Consequently, the Court did err when it found that MBI was "receiving and cashing royalty checks" from Mallinckrodt. (Slip op. of Dec. 2, 2003, at 26)

The second alleged error in the Court's opinion relates to the Defendant's sublicense agreement with Chugai Pharmaceuticals. Plaintiff suggests that the Court implicitly found that MBI was "receiving and cashing royalty checks" from Chugai. (Slip op. of Dec. 2, 2003, at 26) Plaintiff is again correct that the Defendant presented no evidence that it had received royalty checks from Chugai pharmaceuticals. Chugai has not yet received permission from the Japanese regulatory authorities to market or sell Optison. If and when Chugai obtains the regulatory approvals necessary, MBI would be entitled to receive royalties as described in the Cooperative Development and Marketing Agreement (CDMA). (Pl. Tr. Ex. 36, at MBI00855–56) To the extent that the Court's December 2, 2003 opinion intimated that MBI had already received royalties from Chugai, it was in error.

2

Although Plaintiff correctly highlights these two factual errors in the Court's opinion, neither of these errors undermines the Court's conclusion that MBI was still engaging in business operations related to the Feinstein patents at the time Plaintiff submitted its Notice of Termination. With respect to the Mallinckrodt error (which was the larger of the two), at the time of Plaintiff's Notice of Termination, MBI was entitled to receive royalties from Mallinckrodt for nearly two more years. Plaintiff presents deposition testimony from Theodore Roth, the President and Chief Operating Officer of Alliance, that MBI was not expecting to receive any payments from the sale of Optison.[1] Whether it expected the sales milestones to be reached is irrelevant to whether it was still conducting business related to the patents. It is true that after September 30, 2003, MBI had no claim to royalties (expected or unexpected) under the sublicense with Mallinckrodt, but that alone would not establish a voluntary suspension of business operations under the Restated License Agreement because MBI has another sublicense agreement in place.[2]

With respect to the Chugai sublicense, the corrected fact has no effect on the outcome. Defendant MBI remains entitled to receive royalties under its sublicense with Chugai if and when

---

[1] The deposition question and answer is as follows:
Q: Mr. Roth, does Alliance expect to receive any payments from the licensed products under the restated license agreement?
A: No.

(Pl. Mot. Alter or Amend, Ex. 1 at 53, lines 3–6) Although it is not clear that this evidence establishes that MBI (as opposed to Alliance) was not expecting to receive any payments, the Court will assume for the sake of this opinion that MBI did not expect to receive royalty payments.

[2] MBI's excision of itself from the relationship with Mallinckrodt would lend support to an argument that the sublicense with Mallinckrodt violated the anti-assignment provision of the Restated License Agreement, but the Plaintiff explicitly waived that argument.

3

regulatory approval is obtained. MBI was entirely within its rights under the Restated License Agreement to enter into this sublicense with Chugai. Until such time that the sublicense with Chugai expires or is cancelled, MBI will continue to conduct business operations related to the Feinstein patents.

As noted in the original opinion of December 2, 2003, the parties executed an agreement that contained an ambiguous term: "voluntary suspension of business operations." The Court construed this term to mean any and all business operations, active or passive, related to the Feinstein patents. As of December 14, 2001, when the Plaintiff submitted its Notice of Termination, Defendant MBI was still conducting passive business operations relating to the Feinstein patents. It was not, as the Court originally found, receiving and cashing royalty checks from its two sublicensees. Instead, as of December 14, 2001, MBI was waiting to learn whether it would be entitled to royalties from either of its two sublicensees. Today, MBI has no current or future claim to royalties from Mallinckrodt. It does, however, have a contingent claim to royalties in the future from Chugai. This is sufficient to constitute business operations under the Restated License Agreement. Therefore, the two factual errors that Plaintiff detected in the Court's opinion do not alter the Court's original conclusion.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's Motion to Alter or Amend the Judgment.

**Enter:**

_David W. Coar_

**David H. Coar**
**United States District Judge**

**Dated: January 29, 2004**